**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| PANTAURUS LLC,<br><br>PLAINTIFF,<br><br>v.<br><br>EHARMONY, INC.,<br><br>DEFENDANT. | Case No. 1:14-cv-442<br><br>JURY TRIAL DEMANDED |

**EHARMONY, INC.'S MOTION TO TRANSFER VENUE**
**TO THE NORTHERN DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

A. PanTaurus Exists Only to File Lawsuits for Infringement of the ’553 Patent .......... 2

B. eHarmony’s Witnesses and Documents Are Located in California .......... 2

C. Relevant Third Party Witnesses with Material Information Reside in the Northern District of California .......... 3

D. No Substantive Proceedings Have Taken Place in This District .......... 5

III. THIS CASE SHOULD BE TRANSFERRED IN THE INTERESTS OF JUSTICE AND FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES .......... 5

A. This Suit Could Have Been Filed in the Northern District of California .......... 6

B. The Private Factors Favor a Venue Transfer to California .......... 6

1. Most Relevant Evidence Is Located in or Near the Northern District of California .......... 7

2. The Convenience of the Witnesses Favors Transfer .......... 8

3. The Availability of Compulsory Process Favors a Transfer .......... 10

4. No Delay or Prejudice Will Be Caused By a Transfer .......... 11

C. The Public Interest Factors Also Favor Transfer of This Action .......... 11

1. Court Congestion in this District Favors a Transfer .......... 12

2. Northern California has a Greater Interest in this Case .......... 12

3. The Remaining Public Interest Factors Are Neutral .......... 13

D. Judicial Economy Favors a Transfer of This Case .......... 13

IV. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.*,
968 F. Supp. 2d 852 (E.D. Tex. 2013)....................12

*Evolutionary Intelligence, LLC v. Facebook, Inc.*,
No. 6:12-cv-784, 2013 WL 8360309 (E.D. Tex. Aug. 27, 2013)....................13

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947)....................12

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010)....................9

*In re Genentech*,
566 F.3d 1338 (Fed. Cir. 2009)....................7, 8, 10

*In re Hoffman-La Roche*,
587 F.3d 1333 (Fed. Cir. 2009)....................12

*In re Horseshoe Entm't*,
337 F.3d 429 (5th Cir. 2003)....................11

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011)....................9, 13

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009)....................5, 6, 8, 14

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008).................... passim

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004)....................5, 8, 12

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008)....................5, 6, 7, 11

*In re Zimmer Holdings, Inc.*,
609 F.3d 1378 (Fed. Cir. 2010)....................9, 13

*Klausner Techs., Inc. v. Interactive Intelligence Group., Inc.*,
No. 6:11-cv-578-LED (E.D. Tex. Sept. 26, 2012)....................14

*ON Semiconductor Inc. v. Hynix Semiconductor Corp.*,
No. 6:09-cv-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010)....7

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)....5

*Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'n*,
402 F. Supp. 2d 731 (E.D. Tex. 2005)....10

**STATUTES**

28 U.S.C. § 1391(c)(2)....6

28 U.S.C. § 1400(b)....6

28 U.S.C § 1404(a)....1, 2, 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45(c)(1)(A)....10

## I. INTRODUCTION

This suit should be litigated in the Northern District of California, not the Eastern District of Texas. PanTaurus LLC has accused California-based eHarmony, Inc. of infringing a single patent based on eHarmony's use of open source software developed by and acquired from third party Cloudera, Inc., located in Palo Alto, California. Additional third parties having material prior art, as well as likely licensees of the asserted patent, are located there, as well. The Northern District of California is a much more convenient forum for all of these necessary third party witnesses, as well as for all of the eHarmony employees having relevant information in this matter.

At the same time, this patent action has no meaningful connection to this district. PanTaurus is a patent assertion entity whose sole purported tie to Texas is its recent business registration and the numerous lawsuits it has filed in this Court. Only a handful of relevant documents are known to be located in this district, and no known third-party witnesses are located here. eHarmony has no offices, employees, documents, or computer source code in the Eastern District of Texas. The Northern District of California is not only a more convenient forum, but it enjoys a meaningful interest in adjudicating this dispute.

These are precisely the circumstances that 28 U.S.C § 1404(a) was intended to address. None of the factors the Court must consider in applying that statute weighs in favor of this district, and most weigh heavily in favor of transfer. Thus, the interests of justice and the convenience of the parties and witnesses would best be served by a transfer of this case to the Northern District of California.

## II. STATEMENT OF FACTS

### A. PanTaurus Exists Only to File Lawsuits for Infringement of the '553 Patent.

PanTaurus was formed as a Texas limited liability company in June 2013, less than one month before it acquired the '533 patent. Declaration of David R. Knudson in Support of eHarmony, Inc.'s Mot. to Transfer Venue ("Knudson Decl."), Exs. 1-2. PanTaurus is a non-practicing entity with no apparent business in the Eastern District of Texas (or elsewhere) other than litigation. Shortly after acquiring the '533 patent, PanTaurus began a broad campaign of patent infringement lawsuits in this district.[1]

PanTaurus accuses eHarmony of infringing the '533 patent by using digital computer systems with Hadoop-compatible file systems. Compl. ¶ 13 (Dkt. # 1). As stated in the complaint, "[a] Hadoop distributed file system, often referred to by the acronym 'HDFS,' is a distributed file system that includes computer hardware (e.g., servers and memory) and computer software for performing program functions." *Id*.

### B. eHarmony's Witnesses and Documents Are Located in California.

eHarmony is a leading online dating site for single individuals, ranked as the #1 Trusted Relationship Services Provider in the U.S. Declaration of Thod Nguyen in Support of eHarmony, Inc.'s Mot. to Transfer Venue ("Nguyen Decl."), at ¶ 2. eHarmony is a Delaware corporation founded in 2000, with a principal place of business in Santa Monica, California. *Id.* at ¶ 3. eHarmony employs all of its approximately 185 employees in California. *Id.* The eHarmony employees most knowledgeable about the use and operation of the accused system,

[1] On September 3, 2013, less than two months after acquiring the '533 patent, PanTaurus filed fifteen actions in this district alleging infringement of the '533 patent. See Case Nos. 1:13-cv00538-52. All of these were settled and/or dismissed early in the case. See id. PanTaurus filed a second wave of sixteen cases on April 23, 2014. See Case Nos. 1:14-cv-00226-41. All of these were also settled and/or dismissed early in the case. PanTaurus filed a third wave of twelve cases, including this case against eHarmony, on September 2, 2014, see Case Nos. 1:14-cv00439- 50, and a fourth wave of thirteen cases on October 10, 2014. See Case Nos. 1:14-cv00511-23. All remaining cases are in their early stages.

which would be relevant to the alleged infringement of the asserted patent, are all located in the Los Angeles area and include Thod Nguyen, Hav Mustamandi, Richard Krusewski, Jonathan Morra, David Gevorikyan, Deepu Mathew, Paul Schiptsch, Verun Rahimtoola, Rick Warren and Keith Dale. *Id.* at ¶8. eHarmony employees most knowledgeable about eHarmony's sales and marketing efforts, which may be relevant to any damages calculation, are also located in the Los Angeles area and include Elizabeth Downs and AJ Minnetian. *Id.* eHarmony has no offices, facilities, or employees in the state of Texas. *Id.* at ¶3.

**C. Relevant Third Party Witnesses with Material Information Reside in the Northern District of California.**

Third party companies and their employees likely having relevant information reside in and around Palo Alto, in the Northern District of California. Even at this early stage of litigation, eHarmony is able to identify the following relevant third party witnesses:

1. Cloudera, Inc. eHarmony obtained the Hadoop Enterprise software package used in its accused system from Cloudera, Inc. Nguyen Decl. at ¶ 5. Cloudera was founded in October 2008 and was the first company to commercialize Hadoop. *Id.* Cloudera is headquartered in Palo Alto, and has approximately 750 employees in 15 countries. *Id.* Thus, Cloudera employees knowledgeable about the design, development, and operation of the accused system are likely to reside in or near Palo Alto, California. *Id.* eHarmony's particular contacts at Cloudera regarding the Hadoop software package include Feras Nazzal, Ben White and Amina Abdulla. *Id.*

2. Oracle. eHarmony uses Oracle RAC Solutions Enterprise Database to store its processed data. *Id.* at ¶ 7. According to its website, Oracle is headquartered in Redwood Shores, California. *Id.* Additionally, in 2010 Oracle acquired Sun Microsystems, Inc. Knudson Decl., Ex. 3. eHarmony has preliminarily identified Sun Microsystem's Network File System ("NFS")

as material prior art. Upon information and belief, Sun Microsystems began implementation of the NFS by at least March of 1984, in Mountain View, California. *Id.* at ¶ 15.

3. Network Appliance, Inc. eHarmony has also identified U.S. Patent No. 6,457,130 as material prior art. Network Appliance is the assignee of the ’130 patent, is headquartered in Sunnyvale, California, and each of the five named inventors on the ’130 patent appear to reside in Northern California cities. *Id.*, Exs. 4-5.

4. Matthew Shafe. Mr. Shafe is the named inventor of U.S. Patent No. 6,035,429, which is additional prior art identified by eHarmony and which was cited in a recent inter partes review petition brought against the ’533 patent. Mr. Shafe also apparently resides in the Northern District of California. *Id.*, Ex. 6; *see also id.*, at ¶ 14.

5. Douglass R. Cutting. Mr. Cutting is the co-creator of Hadoop and resides in Northern California. *Id.*, Ex. 7. Mr. Cutting is expected to have knowledge on the development of Hadoop, as well as likely prior art.

These third-party witnesses cannot be compelled to testify in Texas.

In addition, many defendants in related cases have already settled. Such settlements likely included a license of the ’533 patent. A significant number of these third parties— including Acer America Corp., Apple, Inc., Asus Computer International, Fujitsu America, Inc., Hewlett-Packard Company, Lexar Media, Inc., and SanDisk Corporation—have principal offices in Northern California and are likely to have information relevant to damages. *Id*. at ¶ 12; Ex. 9.

By contrast, no known third-party witnesses reside in the Eastern District of Texas. The asserted patent names Hendrik A. Browne as the sole inventor, who was based in Virginia at the time he filed for the ’533 patent. Compl. (Dkt. #1), at Ex. A. Upon information and belief, Mr.

Browne still resides in the Washington D.C. metropolitan area. Knudson Decl. at ¶ 13. It also does not appear that any prosecution activities related to the asserted patent took place in Texas.

### D. No Substantive Proceedings Have Taken Place in This District.

This case is in its infancy. The initial case management conference is scheduled for March 24, 2015, and no discovery has occurred. The other Third and Fourth Wave cases are also in their infancies. No PanTaurus lawsuit in this District has reached the stage of claim construction or other substantive proceedings.

## III. THIS CASE SHOULD BE TRANSFERRED IN THE INTERESTS OF JUSTICE AND FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES

For the convenience of parties and witnesses, and in the interest of justice, a district court may transfer an action to another district where it might have been filed. 28 U.S.C. § 1404(a). Section 1404(a) is intended to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The party seeking transfer of venue must show that the transferee district is "clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"*)*.

The threshold inquiry when analyzing a transfer motion is whether the suit could have been filed in the district to which transfer is sought. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold is met, a court analyzes the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *See In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

Relevant private factors include: (1) the relative ease of access to evidentiary sources; (2) the availability of compulsory process to secure attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make trial easy, expeditious, and inexpensive. *Id*. at 1198.

Factors bearing on the public's interest include: (1) relative court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law. *Id.*

These factors are "not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15. However, the plaintiff's choice of forum is *not* a relevant factor; indeed, the Fifth Circuit "forbids" its consideration. *In re Nintendo*, 589 F.3d at 1200. Instead, the "good cause" burden borne by a party seeking a transfer "reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Volkswagen II*, 545 F.3d at 315.

**A. This Suit Could Have Been Filed in the Northern District of California.**

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides," 28 U.S.C. § 1400(b), and a defendant is deemed to reside "in any judicial district in which [it] is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(c)(2).

Although eHarmony's principle place of business is in Santa Monica, located in the Central District of California, it advertises and offers its services across the country, including in the Northern District of California, and thus it is subject to personal jurisdiction in that district. This action therefore could have been brought in the Northern District of California, and should be litigated there. This threshold requirement is easily met.

**B. The Private Factors Favor a Venue Transfer to California.**

All the relevant private factors bearing on a venue transfer motion—(1) the relative ease of access to evidence; (2) the availability of compulsory process to secure trial attendance of

witnesses; (3) the cost of attendance for willing witnesses; and (4) other considerations that make trial easy, expeditious, and inexpensive—favor a transfer to the Northern District of California.

**1. Most Relevant Evidence Is Located in or Near the Northern District of California.**

A court deciding whether to transfer venue must consider which party "most presumably will have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *ON Semiconductor Inc. v. Hynix Semiconductor Corp.*, No. 6:09-cv-390, 2010 WL 3855520, at *2 (E.D. Tex. Sept. 30, 2010). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal citations and quotations omitted). The location of documents and evidence remains an important factor, despite advances in data transfer technologies. *Id.*; *see also Volkswagen II*, 545 F.3d at 316; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008).

Here, many sources of proof in this case—including documents of third-party entities—are located in the Northern District of California. Documents related to the design and operation of the Hadoop software are likely to be housed at Cloudera's Palo Alto headquarters. Additionally, documents concerning relevant prior art systems are expected to be in the possession of the companies and witnesses listed above, who also reside in Northern California. Third-party licensees of the '533 patent are also headquartered in Northern California and likely to possess documents relevant to damages. Knudson Decl., Ex. 9; *id.* at ¶ 12.

Additional important sources of proof—including eHarmony's own documents related to the design and use of accused system—are also located in California. Nguyen Decl. at ¶ 9. eHarmony has no documents in the Eastern District of Texas. *Id*. at ¶ 10.

PanTaurus's relevant evidence appears to be limited to the various settlement agreements it has entered in the related cases. And, inasmuch as PanTaurus recently formed as a company in Texas, and its business appears limited to suing on the '533 patent, it is highly unlikely that any other relevant documents are located in this district. Because the majority of key documents and witnesses are located in California, access to sources of proof strongly favors transfer.

**2. The Convenience of the Witnesses Favors Transfer.**

"'The convenience of the witnesses is probably the single most important factor in transfer analysis.'" *In re Genentech*, 566 F.3d at 1343 (citation omitted). In analyzing the cost and burden of attending trial, the Court considers the convenience of both party and non-party witnesses. *See Volkswagen I*, 371 F.3d at 204. All potential witnesses with relevant information must be taken into account, regardless of their likelihood of testifying at trial. *See In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

"'Additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.'" *In re TS Tech*, 551 F.3d at 1320 (quoting *Volkswagen I,* 371 F.3d at 205). In considering travel costs, the Court also considers costs associated with the time fact witnesses must be away from their regular employment. *See In re Nintendo*, 589 F.3d at 1199.

eHarmony does not know of any potential witnesses in the Eastern District of Texas, apart from PanTaurus's sole managing member. Conversely, many third-party witnesses live in or near the Northern District of California. Such critical witnesses include companies who

provided the Hadoop software used in eHarmony's accused system, persons who developed prior art, and former defendants that likely licensed the '533 patent.

Employees of eHarmony knowledgeable on the development and use of the accused systems, as well as financial information relevant to damages, all reside in the Los Angeles area. Nguyen Decl. at ¶ 8. For these witnesses, travel to the Northern District of California is far more convenient than travel to the Eastern District of Texas. *Id.* at ¶ 11.

As the vast majority of key party and third-party witnesses are located in Northern California, they would incur significant travel costs in connection with the approximately 2000-mile trip to Beaumont, Texas. Knudson Decl., Ex. 8. *See In re TS Tech*, 551 F.3d at 1320 (holding that it was error not to "considerably weigh" the additional 900 miles witnesses would need to travel to attend trial in Texas). It would also be highly disruptive to eHarmony's business if key employees are required to travel to the Eastern District of Texas, spending an entire day to travel to and from Beaumont. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (noting "losses in productivity from time spent away from work"). All these costs would be minimized by transferring this case to the Northern District of California, a short flight from eHarmony's headquarters and where key third-party witnesses reside. Nguyen Decl. at ¶ 11.

While Plaintiff may claim it is more convenient for it to litigate in its chosen forum, the litigation-inspired presence PanTaurus has in Texas should be accorded no weight in deciding whether to transfer this case. *See In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (corporate existence created "in anticipation of litigation" not given significant weight); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) ("MedIdea's presence in Texas appears to be recent, ephemeral, and an artifact of litigation . . . [it] therefore has no presence in Texas that should be given weight in the transfer analysis.").

Because California is far more convenient for the majority of known likely party and non-party witnesses in this case, this "single most important factor" weighs heavily in favor of transfer to the Northern District of California. *See Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'n*, 402 F. Supp. 2d 731, 739 (E.D. Tex. 2005) (granting motion to transfer where "the majority of both party and non-party witnesses will be located in [transferee forum]").

**3. The Availability of Compulsory Process Favors a Transfer.**

Transfer is favored when the transferee district has subpoena power over third-party witnesses with access to relevant information. *See In re Genentech*, 566 F.3d at 1345. The availability of compulsory process to secure witness attendance at trial weighs in favor of transfer—"and not only slightly." *Id*. A court may compel non-party witnesses to testify at trial only when located within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A).

Here, all known non-party witnesses in this case are located outside of Texas, outside the subpoena power of this Court. Testimony from employees of Cloudera concerning the development and structure of the software will be necessary at trial, and can be compelled only if trial occurs in the Northern District of California.

Additionally, the Network File System developed by Sun Microsystems may invalidate claims of the '533 patent. eHarmony expects that discovery will identify Sun/Oracle employees with unique knowledge of NFS. Sun was located in Mountain View, California, and Oracle is headquartered in Redwood Shores, California. Knudson Decl., Ex. 3. Both are located in the Northern District of California, within 100 miles of the San Francisco courthouse. If this case is transferred to the Northern District of California, live testimony will establish a first public use date and enable a jury to understand the full scope of this prior art.

Lastly, likely licensees of the '533 patent include at least Acer America Corp.; Apple, Inc.; Asus Computer International; Fujitsu America, Inc.; Hewlett-Packard Company; Lexar

Media, Inc.; and SanDisk Corporation. *Id.*, Ex. 9. These companies have principal offices in Northern California within 100 miles of the San Francisco courthouse. *Id.* at ¶12.

In contrast, there appears to be no relevant non-party witness located in the Eastern District of Texas. The Northern District of California's subpoena power to secure the attendance of material non-party witnesses, coupled with this Court's lack of subpoena power over a single third-party witness, therefore favors transfer. *See Volkswagen II*, 545 F.3d at 316.

**4. No Delay or Prejudice Will Be Caused By a Transfer.**

The fourth factor—potential delay or prejudice resulting from a transfer—is only relevant in "rare and special circumstances." *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003). No such unusual circumstances are present here. eHarmony is seeking a transfer at the outset of this case, by motion timely made pursuant to the Court's Order Governing Proceedings. (Dkt. # 13). Indeed, timely motions to transfer venue should be made a "top priority in the handling" of a case, and "are to be decided based on the 'situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d at 433 (citation omitted). Discovery has not commenced, and the Court has not set any pretrial dates other than the initial case management conference. Nor has the Court spent any valuable resources analyzing the '533 patent or learning the parties' substantive positions through motion practice. Thus, all of the private interest factors weigh heavily in favor of transfer.

**C. The Public Interest Factors Also Favor Transfer of This Action.**

In addition to considering the parties' private interests, the Court must also consider several factors bearing on the public's interest, including: (1) court congestion; (2) the local interest in having localized interests decided at home; (3) familiarity of the forum with the governing law; and (4) the avoidance of unnecessary problems of conflicts of laws. *In re TS*

*Tech*, 551 F.3d at 1319-20. Applied here, the balance of public interest factors favor a transfer to the Northern District of California.

**1. Court Congestion in this District Favors a Transfer.**

The most recent Judicial Caseload statistics indicate that the Northern District of California's docket is less congested than the Eastern District of Texas's docket. For example, as of September 30, 2014, the Northern District of California has 455 pending cases per judge, whereas the Eastern District of Texas has 696 pending cases per judge. Knudson Decl., Ex. 10. Also, the median time to resolve a civil case in the Northern District of California is less than in the Eastern District of Texas (7.9 months v. 8.4 months, respectively). *Id.* Thus, this factor favors transfer.

**2. Northern California has a Greater Interest in this Case.**

The local interest factor examines the "factual connection" that a case has with the transferee and transferor venues. *Volkswagen I*, 371 F.3d at 206. This factor is important because "'[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.'" *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). Here, the alleged infringing activity—use of a computer system operating with HDFS—occurs exclusively in California. Nguyen Decl. at ¶5. The Hadoop software used in the accused system was likely designed and developed in the Northern District of California. *Id.* at ¶6. As this Court has previously noted, "[t]he Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley." *Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.,* 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013 (Clark, J). Moreover, many relevant third-party witnesses live in the Northern District of California, and thus this case will call into "question the work and reputation" of those individuals in that community. *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

Conversely, there are no factors establishing that this case has a special connection to Texas. That the '533 patent was assigned to a Texas holding company shortly before plaintiff started filing lawsuits in this Court does not give this district a meaningful interest in the underlying litigation, and certainly not one that outweighs the strong local interest of the Northern District of California. A local presence that is an artifact of litigation—as plaintiff's presence appears to be here—is entitled to no weight in a transfer analysis. *See In re Zimmer Holdings*, 609 F.3d at 1381; *In re Microsoft*, 630 F.3d at 1365. Accordingly, the local interest also favors transfer to the Northern District of California.

**3. The Remaining Public Interest Factors Are Neutral.**

Remaining considerations—such as familiarity of the forum with the law, the avoidance of conflicts of law, and the application of foreign law—are neutral. Both the Northern District of California and the Eastern District of Texas are well acquainted with patent law. Moreover, because federal patent law will govern the issues in this case, there are no problems with conflicts of law or the application of foreign law. *See In re TS Tech*, 551 F.3d at 1320.

**D. Judicial Economy Favors a Transfer of This Case.**

Transferring this case will not create significant judicial inefficiencies given that several of the defendants have already sought or intend to seek transfer to the Northern District of California. *See, e.g.*, motions to transfer filed by Hulu and by Facebook in Case Nos. 1:14-cv-445 (Dkt. #15), and 1:14-cv-444 (Dkt. # 22), respectively. Moreover, the fact that other cases may remain in this District does not preclude a transfer of this case. *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010) (holding that the existence of another suit in the forum does not "negate[] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor" transfer); *accord Evolutionary Intelligence, LLC v. Facebook, Inc.*, No. 6:12-cv-784, 2013 WL 8360309, at *8

(E.D. Tex. Aug. 27, 2013); *Klausner Techs., Inc. v. Interactive Intelligence Group., Inc.,* No. 6:11-cv-578-LED (E.D. Tex. Sept. 26, 2012).

Here, judicial economy will be better served by transferring this (and other related cases) to the Northern District of California and allowing the Court there to coordinate proceedings of the actions.

## IV. CONCLUSION

Because "most witnesses and evidence [are] closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff," eHarmony's motion to transfer should be granted. *In re Nintendo*, 589 F.3d at1198. eHarmony respectfully requests that the Court transfer this case to the Northern District of California in the interests of justice and for the convenience of the parties and witnesses.

Dated: March 2, 2015

Respectfully submitted,

**DLA PIPER LLP (US)**

By:*/s/ David R. Knudson*

John M. Guaragna
Texas Bar No. 24043308
DLA Piper LLP (US)
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Phone: 512.457.7000
Fax: 512.457.7001

David R. Knudson (*pro hac vice*)
DLA Piper LLP (US)
401 B. Street, Suite 1700
San Diego, CA 92101
Phone: 619.699.2700
Fax: 619.699.2701

ATTORNEYS FOR DEFENDANT
EHARMONY, INC.

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 2, 2015, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3). Any other counsel of record will be served by a facsimile transmission and/or first class mail.

*/s/ David R. Knudson*
David R. Knudson

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel has complied with the meet and confer requirements in Local Rule CV-7(b). The conference required by this rule was conducted on March 2, 2015, by telephone between David Knudson, counsel for eHarmony, and John Harvey, counsel for PanTaurus. Plaintiff opposes eHarmony's request to transfer this case. Thus, no agreement could be reached, and the discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ David R. Knudson*
David R. Knudson